UNION S. ADAMS & others *vs.* TOWNSEND SCHOOLHOUSE BUILDING COMMITTEE.

Middlesex.   March 20, 1923. — June 5, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Municipal Corporations,* Town meeting: vote to rescind vote of former meeting; Officers and agents. *Equity Pleading and Practice,* Parties.

Where rights have not become vested under a vote of the inhabitants of a town at a town meeting, they may reconsider and rescind the former vote at a special meeting, subsequently called and duly warned.

In the absence of a by-law of the town to the contrary, a vote passed at a town meeting to rescind a vote passed at a previous meeting is valid if carried by a majority of less than two thirds, although the original action required a two thirds vote to become effective.

The question of the validity of a purchase of land by a committee appointed at a town meeting cannot be considered in a suit in equity under G. L. c. 40, § 53, against the committee, to which the town is not a party.

BILL IN EQUITY under G. L. c. 40, § 53, filed in the Superior Court on May 2, 1922, and afterwards amended, by twenty-four taxable inhabitants of the town of Townsend seeking to restrain the defendants from carrying out certain votes of the town relative to the borrowing of money, purchase of land and the erection of a schoolhouse, alleged to have been rescinded by a vote at a subsequent special meeting of the town.

The material facts were agreed to and are described in the opinion.   The suit was reserved by *Morton,* J., for determination by this court upon the pleadings and agreed

facts, such decree to be entered as law and justice might require.

The case was submitted on briefs.

C. F. Baker, R. W. Robbins & S. M. Salny, for the plaintiffs.

R. H. J. Holden & J. D. Carney, for the defendants.

CARROLL, J. This is a petition, by taxable inhabitants of the town of Townsend, against the members of the schoolhouse building committee of that town, under G. L. c. 40, § 53, which provides, so far as material, that if the officers or agents of a town are about to expend or raise money, or incur obligations purporting to bind the town for any purpose, or in any manner other than that for and in which the town has the legal and constitutional right and power to raise or expend money or incur obligations, on petition of not less than ten taxable inhabitants of the town, the court may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power. It was agreed that the plaintiffs are taxable inhabitants of the town and the defendants are the Schoolhouse Building Committee elected at the annual town meeting March 6, 1922. The town is not divided into school districts.

Article 13 of the town warrant for the annual town meeting was " To see if the town will vote to authorize the town treasurer, with the approval of the selectmen, to borrow a sum or sums of money for the construction of a schoolhouse at Townsend Center, and choose a committee to superintend the erection of same." It is stated in the agreed statement of facts that, under this article it was voted:

" A. That the treasurer, with the approval of the selectmen, be authorized to borrow the sum of $60,000 for the purpose of building a new school-house in the Center, the same to be paid by a series of notes of $3,000 each, payable one each year, for a period of twenty years.

" B. That a committee of three be appointed to bring in the names of four to act with the School Committee as a building committee. The committee presented the names of A. D. Bagley, F. W. Rockwood, H. B. Boynton, John Bacon, as that committee; a vote was taken and the above named gentlemen were declared elected.

" C. It was also voted, under said Article, in substance, that said building committee should have full power to select and purchase for the town a site for said proposed school-house.

" The first vote above mentioned, with reference to the raising of money, was passed by one hundred sixty-nine votes in the affirmative and thirty-three in the negative."

The loan of $60,000 under vote A, was partially outside the debt limit of the town of Townsend and was not at that time authorized by the Legislature, although subsequently it was authorized and validated by St. 1922, c. 336, wherein it was enacted that " the Town of Townsend may borrow . . . such sums as may be necessary, not exceeding, in the aggregate, sixty thousand dollars " for the purpose of constructing and equipping a schoolhouse, " of which amount thirty thousand dollars shall be outside the debt limit." Section 2 of this statute was as follows: " The vote passed by the town of Townsend at its meeting held March sixth, nineteen hundred and twenty-two, authorizing the borrowing of sixty thousand dollars for school-house purposes, is hereby validated and confirmed, and the town may borrow for the said purposes in accordance with the said vote, notwithstanding that the total amount authorized is in excess of the amount which might be borrowed in accordance with general law." See *Spaulding* v. *Nourse,* 143 Mass. 490. This act of the Legislature was approved April 27, 1922, and by the third section it was to take effect upon its passage.

Subsequent to March 6, 1922, and before the above mentioned statute was enacted, the defendant committee purchased with funds of the town a lot of land to be used for the proposed school building, for which the sum of $50 was paid. There was no authorization or ratification of this purchase or taking of money, except in so far as the proceedings of the annual town meeting and the act of the Legislature, as above described, may be so construed. The defendants intend to erect the school building on the site purchased by them and to purchase additional land for this purpose. After the annual town meeting, about one hundred forty

citizens of the town petitioned the selectmen to call another meeting to act on the following articles:

" A. To see if the town will vote to rescind its action taken at the annual town meeting held on March 6, 1922, under Article 13 of the Town Warrant, whereby it voted, in substance, that the Treasurer, with the approval of the Selectmen, be authorized to borrow the sum of $60,000 for the purpose of building a new school-house in the Center the same to be paid by a series of notes of $3,000 each, payable one each year for a period of twenty years.

" B. To see if the town will vote to rescind its action taken at the annual town meeting held on March 6, 1922, whereby it voted, in substance, that A. D. Bagley, W. F. Rockwood, H. P. Boynton, and John Bacon, together with the Selectmen, constitute a school-house building committee."

Pursuant to this petition a special town meeting was called and held on April 29, 1922. The warrant contained the above mentioned articles. " This special town meeting was one of the largest ever held in the town and on a motion made under the first Article above set forth, to see if the town would vote to rescind the school-house appropriation vote, two hundred forty-eight voted in favor of rescission, and one hundred sixty-eight against it. This vote was by ballot, with the use of a check-list. No vote was taken on the second article as a motion to adjourn was made, duly seconded and carried, before a vote could be taken under it."

Before balloting under Article A at this special meeting, the moderator ruled that a two thirds vote was necessary " in order for the motion to rescind to prevail," and immediately certain voters protested against the ruling and their protests were duly recorded in the records of the town meeting. It is agreed that " the defendants are proposing to immediately let contracts for the construction of the new school-house and to obligate the town to large expenditures of money, solely by the authority given to them, if any, under the votes at the annual town meeting, and the act of the Legislature, as above set forth."

Where rights have not become vested under the vote of

the inhabitants of a town, they may at an adjourned meeting, or at a subsequent meeting called for the purpose, reconsider the former vote.   As stated by Wells, J., in *Morse* v. *Dwight*, 13 Allen, 163, at pages 166, 167: " When the subject is brought up anew, at an independent meeting, an article in the warrant for such meeting ' to see if the town will reconsider ' its former action brings it before the meeting as an original and not a subordinate question.   A vote that the former vote abolishing the school districts ' be reconsidered,' and a vote ' not to abolish the school district system,' are equivalent to a vote rescinding or annulling the former action of the town.   If no rights had become vested or fixed under such former vote, and it had not yet gone into effect, such recission would intercept and defeat its operation." *Hunneman* v. *Grafton*, 10 Met. 454.   See *Reed* v. *Deerfield*, 176 Mass. 473; *Jersey City* v. *State*, 1 Vroom, 521, 529.

The vote to borrow $60,000, although in excess of the debt limit of the town, was confirmed and validated by the Legislature; and the town could, under St. 1922, c. 336, legally borrow this amount. *Spaulding* v. *Nourse, supra.* But this vote to borrow $60,000 could be reconsidered at a subsequent town meeting, and although it was passed by a two thirds vote, as required by G. L. c. 44, §§ 2, 7, it could be reconsidered by a vote of the majority of the voters at a special town meeting called for the purpose of reconsidering it.   The question of the reconsideration of a vote by the common council was considered in *Nevins* v. *City Council of Springfield*, 227 Mass. 538.   In that case an order laying out Dwight Street was not approved by the mayor.   In the common council the order failed to pass by the required two thirds vote.   Notice was given at the meeting at which the vote was taken, by a member of the council, that " he would move reconsideration of this last vote at the next meeting."   The record of the next meeting shows that a " motion to reconsider made and duly seconded and carried . . . the order was then read and passed in concurrence by roll call vote," showing that two thirds of the members voted for the order, and it was decided that the order was

passed over the veto of the mayor.   It was said at page 545
of the opinion:  " The particular mode of procedure by which
the final determination of that body shall be ascertained and
declared, except as to the points enumerated, is left to gen-
eral parliamentary procedure or to the particular rules of
the legislative body.   If the rules of the body permit recon-
sideration of any vote, there appears to be no reason in the
statute why a vote upon such consideration anew of a meas-
ure vetoed by the executive may not be permitted . . . The
motion to reconsider in the case at bar was made and con-
sidered in accordance with a rule of the common council
which in its general terms applied to a vote of this kind."
So far as the question of reconsidering a measure requiring
a two thirds vote for its adoption is concerned, the principle
decided in *Nevins* v. *City Council of Springfield* is controlling, .
and in the absence of a by-law of the town to the contrary,
such a measure can be reconsidered by a vote of the majority
of the voters.

The article in the warrant for the special town meeting
of April 29, 1922, was to see if the town would vote to rescind
the action taken at the annual town meeting.   Even if the
rules of parliamentary law governing the proceedings of
legislative assemblies require, for the passage of a motion
to rescind, the same vote as the original measure required,
and if the original appropriation must be passed by a two
thirds vote, the measure could be rescinded only by the same
vote.   This rule is not applicable to the conduct of a town
meeting.   The rules governing deliberative assemblies are
not in all particulars adapted to the proceedings of a town
meeting.   To quote the language of the court in *Wood* v.
*Milton,* 197 Mass. 531, 533, a town meeting "is not a rep-
resentative body, but a pure democracy, where the citizens,
as to matters within their jurisdiction, administer the affairs
of the town in person.   It exercises both legislative and
executive functions.   The freest discussion prevails, yet in
some respects its proceedings are inherently somewhat
summary.   The technical rules of parliamentary law, de-
signed for the regulation of deliberative assemblies, are in
some respects ill adapted for the transaction of the affairs

of a town meeting.   Hence, although in general the action of town meetings conforms to parliamentary procedure, it never has been held that they are governed by the strict rules of legislative practice." The voters could give the matter of this expenditure of public funds further consideration.   The vote to reconsider the question could be carried without a two thirds vote, and the original vote could be rescinded by a majority of the voters.   In *Morse* v. *Dwight,* *supra,* a motion to reconsider was treated not as a subsidiary, but as an original motion; and under an article in the warrant for the meeting " To see if the town will reconsider a vote passed April 23, 1866, abolishing the school districts," it was held that the town could vote to reconsider the motion and could vote not to abolish the school district system; and that these votes were equivalent to a vote rescinding or annulling the former action of the town.

In our opinion the town could rescind its former action; and although the statute required a two thirds vote for the passage of the appropriation, the vote could be rescinded and the former action annulled by a majority vote.   The ruling of the moderator, that a two thirds vote was necessary to rescind the vote authorizing the treasurer with the approval of the selectmen to borrow the money, was wrong.   *Stockdale* v. *Wayland School District,* 47 Mich. 226, *Whitney* v. *Hudson,* 69 Mich. 189, *Naegely* v. *Saginaw,* 101 Mich. 532, cited by the defendants, are not applicable to procedure in the town meetings of this Commonwealth, and so far as they are contrary to what is here decided, we must decline to follow them.   We do not consider *Portland & Oxford Central Railroad* v. *Hartford,* 58 Maine, 23, in conflict with the rule that in the absence of a by-law of the town to the contrary, a measure requiring a two thirds vote for its adoption may be reconsidered or rescinded by a vote of a majority of the voters.

The question of the validity of the purchase of the land cannot be considered in this proceeding to which the town is not a party.

It follows from what has been said, that the defendants are to be restrained from erecting a building on the land

purchased by the committee, as asked for in the first and second prayers of the petitioners' complaint; that the vote authorizing the committee to choose a site for a building and the vote authorizing the loan be declared invalid, as asked for in the sixth and seventh prayers; that the defendants be restrained from expending money; and that the vote at the special town meeting rescinding the former action · be declared valid, as requested in the ninth and tenth prayers of the plaintiffs' bill.

*So ordered.*